IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

GERARD LOUIS,

     Plaintiff,

v.                                        Civil Action No. 5:08CV151
                                                      (STAMP)
WARDEN (Acting) RICARDO MARTINEZ,
UNIT MANAGER CHRIS GRINER[1] and
LIEUTENANT VINCE CLEMENTS,

     Defendants.


<u>MEMORANDUM OPINION AND ORDER</u>
<u>DENYING THE DEFENDANTS' SECOND MOTION TO DISMISS,</u>
<u>OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT;</u>
<u>GRANTING THE PLAINTIFF'S MOTION TO REQUEST TRIAL BY JURY;</u>
<u>DENYING THE PLAINTIFF'S MOTION FOR LEAVE TO FILE</u>
<u>PLAINTIFF'S RESPONSE TO DEFENDANTS' REPLY TO PLAINTIFF'S</u>
<u>RESPONSE TO DEFENDANTS' SECOND MOTION TO DISMISS,</u>
<u>OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT;</u>
<u>DENYING THE PLAINTIFF'S MOTION TO ALLOW, AND ACCEPT</u>
<u>PLAINTIFF'S RESPONSE TO DEFENDANTS' REPLY</u>
<u>DATED NOVEMBER 18, 2010, DUE TO EXCUSABLE NEGLECT;</u>
<u>DENYING WITHOUT PREJUDICE THE PLAINTIFF'S MOTION TO</u>
<u>SUBPOENA MR. RANDALL CORBETT AS A MATERIAL WITNESS AND</u>
<u>HAVE U.S. MARSHALS SERVICE SERVE THE SUBPOENA;</u>
<u>DENYING WITHOUT PREJUDICE THE PLAINTIFF'S MOTION TO</u>
<u>REQUEST PRETRIAL CONFERENCE BY VIDEO TELECOMMUNICATION;</u>
<u>DENYING WITHOUT PREJUDICE THE PLAINTIFF'S MOTION TO COMPEL</u>
<u>PRODUCTION OF THE DEPOSITION OF INMATE X AT TRIAL, OR IN THE</u>
<u>ALTERNATIVE, TO PROVIDE PLAINTIFF A COPY OF THE TRANSCRIPTS</u>
<u>AND, IF POSSIBLE, THE ACTUAL VIDEO OF THIS DEPOSITION;</u>
<u>DENYING WITHOUT PREJUDICE THE PLAINTIFF'S MOTION IN LIMINE;</u>
<u>DENYING WITHOUT PREJUDICE THE PLAINTIFF'S MOTION FOR PLAINTIFF</u>
<u>TO APPEAR PERSONALLY AT TRIAL AND FOR A RULING REGARDING</u>
<u>SECURITY MEASURES, IF ANY, TO BE UTILIZED BY U.S.M.S.</u>
<u>ON PLAINTIFF DURING PROCEEDINGS, INCLUDING TRIAL;</u>
<u>AND SCHEDULING STATUS AND SCHEDULING CONFERENCE</u>

---

[1]The plaintiff misspelled the name of this defendant in the caption. This defendant's last name should be spelled Greiner.

## I.  Procedural History

The plaintiff, Gerard Louis, proceeding <u>pro se</u>,[2] filed a complaint on September 29, 2008, asserting constitutional claims against the defendants.  Because the plaintiff is a federal prisoner, his constitutional claims are evaluated under <u>Bivens v. Six Unknown Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971) ("<u>Bivens</u>"), which established a direct cause of action under the Constitution of the United States against federal officials for violation of federal constitutional rights.  <u>Bivens</u>, 403 U.S. at 397.

This matter was referred to United States Magistrate Judge James E. Seibert for an initial review and report and recommended disposition pursuant to Local Rule Prisoner Litigation Procedure 83.01, <u>et seq</u>., and 28 U.S.C. §§ 1915(e) and 1915(A).  The magistrate judge issued a report and recommendation recommending that the defendants' initial motion to dismiss or in the alternative, motion for summary judgment be granted with respect to the plaintiff's claims regarding retaliation and be denied with respect to the plaintiff's claim that his Eighth Amendment rights were violated and that the defendants are entitled to qualified immunity.  In addition, the magistrate judge recommended that this Court issue a scheduling order to address the issue of an alleged violation of the plaintiff's Eighth Amendment rights.  On February

---

[2]"<u>Pro se</u>" describes a person who represents himself in a court proceeding without the assistance of a lawyer.  <u>Black's Law Dictionary</u> 1341 (9th ed. 2009).

16, 2010, this Court entered a memorandum opinion and order, adopting and affirming the magistrate judge's report and recommendation in its entirety.

This Court then issued a scheduling order to address the issue of an alleged violation of the plaintiff's Eighth Amendment rights. The parties conducted discovery. On September 27, 2010, the defendants filed their second motion to dismiss, or in the alternative, motion for summary judgment. In addition to five declarations that the defendants attached to their objection to the magistrate judge's report and recommendation, the defendants have offered into evidence additional evidentiary declarations. The plaintiff filed a response and statement of disputed facts to which the defendants replied. The plaintiff filed a motion for leave to file a surreply, to which the defendants objected. The plaintiff then filed a motion for this Court to allow and accept the plaintiff's response to the defendants' reply, dated November 18, 2010, due to excusable neglect.[3]

---

[3]The Court denies the plaintiff's "motion for leave to file plaintiff's response to defendants reply to plaintiff's response to defendants' second motion to dismiss, or, in the alternative, for summary judgment" (Document No. 133) and the plaintiff's motion to allow, and accept plaintiff's response to defendants' reply, dated November 18, 2010, due to excusable neglect (Document No. 136). Local Rule of Prisoner Litigation Procedure 11.4 provides that "Surreply and Surrebuttal Memoranda may not be filed." Alternatively, even if this Court considered the plaintiff's surreply on the merits, a surreply is permitted when a party seeks to respond to new material that an opposing party has introduced for the first time in its reply brief. Schwarzer, Tashima, & Wagstaffe, Federal Civil Procedure Before Trial 12:110 (The Rutter Group 2008). See also Khoury v. Meserve, 268 F. Supp. 2d 600, 605 (D. Md. 2003) ("Surreplies may be permitted when the moving party

For the reasons set forth below, this Court finds that the defendants' second motion to dismiss, or in the alternative, motion for summary judgment should be denied.  Accordingly, this Court grants the plaintiff's motion for trial by jury.  In addition, this Court believes that it should appoint counsel for the plaintiff.[4]  Plaintiff's counsel will be appointed by separate order.

## II.  Facts

According to the complaint, the plaintiff states that he had a disagreement with his cell mate on February 7, 2007.  He alleges that his cell mate assaulted him and made threats against his life.  The plaintiff alleges that he informed the Unit Counselor that he had reason to believe his life was in danger if he remained in the

---

would be unable to contest matters presented to the court for the first time in the opposing party's reply.").  That is not the case here.  The defendants, in their reply, do not introduce any new material to which the plaintiff has not had the opportunity to respond.  Accordingly, the plaintiff's motion to file a surreply and the plaintiff's motion for this Court to accept the plaintiff's surreply are denied.

[4]Because this Court denies the defendants' second motion to dismiss, or in the alternative, motion for summary judgment, and is appointing counsel for the plaintiff, the plaintiff's motions regarding trial are denied without prejudice to refiling by the plaintiff's appointed counsel.  These motions are the plaintiff's motion to subpoena Mr. Randall Corbett as a material witness and have U.S. Marshals Service serve the subpoena (Document No. 96); the plaintiff's motion to request pretrial conference by video telecommunication (Document No. 97); the plaintiff's motion to compel production of the deposition of Inmate X at trial or, in the alternative, to provide plaintiff a copy of the transcripts and, if possible, the actual video of this deposition (Document No. 98); the plaintiff's motion in limine (Document No. 99); and the plaintiff's motion for plaintiff to appear personally at trial and for a ruling regarding security measures, if any, to be utilized by U.S.M.S. on plaintiff during proceedings, including trial (Document No. 100).

cell, or even the same unit as his cell mate. As a result of this report, the plaintiff alleges that defendant Unit Manager Chris Greiner ("Greiner") ordered a move for the plaintiff.

On March 16, 2007, the plaintiff states that Greiner told the plaintiff that he would be moving back to his former cell. The plaintiff allegedly told Greiner that a transfer back to his former cell with his former cell mate would place his life in grave danger. The plaintiff allegedly next spoke with Operations Lieutenant Vince Clements ("Clements"). After making some phone calls, Clements allegedly ordered the plaintiff back to his former cell. The plaintiff also states that he spoke with Warden Ricardo Martinez ("Martinez"). The plaintiff allegedly gave Martinez a BP-9 and told him that he was in imminent danger. The plaintiff asked to be placed in protective custody in the Special Housing Unit ("SHU") or transferred. Martinez allegedly told the plaintiff there was no room in the SHU, but that if the plaintiff had eighteen months of clear conduct, Martinez would "ship" the plaintiff.

The plaintiff states that despite his best efforts to get along with his cell mate, on April 11, 2007, his cell mate raped him. The plaintiff seeks $100,000.00 in damages from each of the three defendants.

### III. <u>Applicable Law</u>

Under Rule 56(c) of the Federal Rules of Civil Procedure,

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. _See_ _Celotex Corp. v. Catrett_, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." _Temkin v. Frederick County Comm'rs_, 945 F.2d 716, 718 (4th Cir. 1991), _cert. denied_, 502 U.S. 1095 (1992)(citing _Anderson v. Liberty Lobby, Inc._, 477 U.S. 242, 247-48 (1986)).

However, as the United States Supreme Court noted in _Anderson_, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." _Anderson_, 477 U.S. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." _Id._ at 250; _see also_ _Charbonnages de France v. Smith_, 597 F.2d 406, 414 (4th Cir.

1979) (Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing <u>Stevens v. Howard D. Johnson Co.</u>, 181 F.2d 390, 394 (4th Cir. 1950))).

In <u>Celotex</u>, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. <u>See</u> <u>Oksanen v. Page Mem'l Hosp.</u>, 912 F.2d 73, 78 (4th Cir. 1990), <u>cert. denied</u>, 502 U.S. 1074 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

B.   <u>Jury Demand</u>

The Federal Rules of Civil Procedure set forth the requirements for a jury demand in federal court. Rule 38 states in pertinent part:

> (b)   Demand.  On any issue triable of right by a jury, a party may demand a jury trial by:
>      (1)   serving the other parties with a written demand -- which may be included in a pleading -- no later than 14 days after the last pleading directed to the issue is served;

>                    (2)  filing the demand in accordance with Rule
>                    5(d).
>
>                                        . . .
>
>            (d)  Waiver; Withdrawal.  A party waives a jury trial
>       unless its demand is properly served and filed.  A proper
>       demand may be withdrawn only if the parties consent.

Fed. R. Civ. P. 38(b),(d).

This rule is supplemented by Rule 39(b), which states that

"[i]ssues on which a jury trial is not properly demanded are to be

tried by the court.  But the court may, on motion, order a jury

trial on any issue for which a jury might have been demanded."

Fed. R. Civ. P. 39(b).

Resolution of a Rule 39(b) motion is "committed to the

discretion of the trial court."  Malbon v. Pennsylvania Millers

Mut. Ins. Co., 636 F.2d 936, 940 (4th Cir. 1980).  In deciding

whether to grant a Rule 39(b) motion, courts may be guided by the

following four factors:

>            (1)  whether the issues are more appropriate for
>       determination by a jury or a judge (i.e., factual versus
>       legal, legal versus equitable, simple versus complex);
>       (2) any prejudice that granting a jury trial would cause
>       the opposing party; (3) the timing of the motion (early
>       or late in the proceedings); and (4) any effect a jury
>       trial would have on the court's docket and the orderly
>       administration of justice.

Id. at 940 n. 11 (citations omitted).

A number of courts have also considered a fifth factor -- the

reason for the failure to make a timely jury demand.  See Farias v.

Bexar County Bd. of Trustees for Mental Health Retardation

Services, 925 F.2d 866, 873 (5th Cir.), cert. denied, 502 U.S. 866

(1991); <u>Kitchen v. Chippewa Valley Sch.</u>, 825 F.2d 1004, 1012-13 (6th Cir. 1987); <u>Mardesich v. Marciel</u>, 538 F.2d 848, 849 (9th Cir. 1976). The Supreme Court of the United States has also noted, in dicta, that a district court's discretion generally is guided by "the justifiability of the tardy litigant's delay and the absence of prejudice to his adversary." <u>Pierce v. Underwood</u>, 487 U.S. 552, 562 (1988).

IV.  <u>Discussion</u>

A.  <u>Plaintiff's Eighth Amendment Claims</u>

In their second motion to dismiss, or in the alternative, for summary judgment, the defendants contend that the plaintiff's Eighth Amendment claim must be dismissed because the defendants did not act with deliberate indifference. A prison official violates the Eighth Amendment when he is deliberately indifferent "to a substantial risk of serious harm to an inmate." <u>Farmer v. Brennan</u>, 511 U.S. 825, 828 (1994). The Eighth Amendment imposes the duty on a prison official to "take reasonable measures to guarantee the safety of inmates," which includes protecting prisoners from "violence at the hands of other prisoners." <u>Id.</u> at 832-33. While the Supreme Court has not addressed at what point a risk of inmate assault becomes sufficiently substantial for Eighth Amendment purposes, the Supreme Court has stated that for a prison official to be found liable under the Eighth Amendment for denying an inmate humane conditions of the confinement, the official must know of and disregard "an excessive risk to inmate health or safety." <u>Id.</u> at

837.  Further, the official must "both be aware of fact from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  <u>Id.</u>

In support of his contention that the defendants knew of the risk to him, the plaintiff states that: (1) Inmate X previously assaulted the plaintiff on February 7, 2007 and that Greiner knew of the assault; (2) Inmate X was known to be dangerous; and (3) the plaintiff informed the three defendants that he would be in danger if he was forced to move back into a cell with Inmate X.  This Court finds that the defendants have not met their burden of establishing that there are no genuine issues of material fact.

The plaintiff alleges that Inmate X either hit or slapped him on February 7, 2007 and that the plaintiff then informed Corbett of the alleged assault.  The plaintiff states he told Corbett he wanted a cell in another unit and that Corbett telephoned Greiner and advised Greiner of the alleged assault.  Corbett allegedly told Greiner that the plaintiff had been assaulted and that he had found another homosexual inmate in the A-1 Unit with whom the plaintiff could cell.  The plaintiff states that Corbett sought the assistance of a unit officer to remove Inmate X from the cell and place him in a multi purpose room while the plaintiff gathered his personal items.  The plaintiff then states in his deposition that Corbett escorted him to the A-1 Unit.[5]

---

[5]The plaintiff originally called the February 7 move an "emergency" move.  The plaintiff concedes that no "emergency move" exists in general population.  However, the plaintiff states that

The defendants contend that the plaintiff's claims as to the February 7, 2007 incident are baseless. The defendants first state that Greiner was not at home sick on February 7, 2007 as the plaintiff states. Whether Greiner was home sick on February 7, 2007 is not a material fact. Instead, the important fact for summary judgment is whether Greiner knew of the alleged assault on February 7, 2007. The defendants next cite the plaintiff's deposition testimony. In his deposition, the plaintiff states that he proposed two alternatives to Corbett on February 7. He states that he asked for a move to another unit or placement in the SHU. The defendants state that it is "unlikely" that the plaintiff proposed a move to SHU as the plaintiff has stated he would not allege an assault to medical staff because of the near certainty he would be placed in the SHU. The defendants "submit that Plaintiff never suggested SHU to Counselor Corbett, in fact, because Plaintiff knew that, if Corbett or Greiner were aware Inmate X had struck Plaintiff, Plaintiff would have been sent to SHU." This Court finds that this is a genuine issue of material fact that this Court cannot decide on summary judgment. As this Court stated in its February 16, 2010 memorandum opinion and order, the plaintiff states that he did not file a grievance regarding the February assault because he was moved out of the cell and therefore had no reason to file a grievance. Further, the plaintiff's statement that he did not require medical attention and did not want to go to

_____

while the move may not have been an emergency, it was immediate.

SHU pending an investigation does not conclusively mean that given the choice between returning to a cell with Inmate X or reporting the assault and moving into the SHU that the plaintiff would choose returning to the cell with Inmate X. If the plaintiff's allegations are true, the plaintiff did not need to make that choice as Corbett moved him to a new cell.

Corbett states in an affidavit that the plaintiff did not report an assault on February 7, 2007 and Shawn Llewellyn, the unit officer who allegedly assisted Corbett by moving Inmate X into a multi purpose room, does not recall assisting Corbett. Greiner denies being advised of the assault and states he would have taken steps to have both inmates medically assessed and placed in the SHU. In deposition testimony, Greiner stated that he would have had no objection to Corbett making a unilateral decision to move the plaintiff for a reason that did not involve imminent inmate physical safety issues. After a review of the newly submitted evidence, this Court finds that there is still a genuine issue of material fact regarding the alleged assault on February 7, 2007 and the circumstances surrounding the plaintiff's move on that date.

On March 16, 2007, the plaintiff was transferred from Unit F-2 to his previous cell in Unit A-2 with Inmate X. In a declaration, Greiner states that many inmates did not want to share a cell with the plaintiff. The decision was made for Louis to move back into the cell with Inmate X because they had previously shared a cell "without difficulty." Greiner stated that when the decision was

made to move the plaintiff to his former cell, Greiner had no knowledge of any February 2007 assault. The plaintiff states in his deposition that he complained of the move to F-2 Unit officer Steven Holmes, Unit F-2 Counselor Kimberly Nichols, Greiner, and Lieutenant Vincent Clements. None of these defendants recall the plaintiff approaching them. They show that the Sensitive Information Summary for March 16, 2007 does not reflect any entry regarding the plaintiff. The defendants contend that had the plaintiff expressed fear for his safety, it would be in this Summary. The Unit A-2 log on that day reflects nothing about the plaintiff except that he was received into the unit on that day. The defendants state that Corbett does not remember the plaintiff's return to Unit A-2 because it was a "non-event." The defendants state that the plaintiff did not protest his return to Corbett or any other A-2 staff member "because he did not have safety concerns about Inmate X and had not reported an assault to Corbett on February 7, 2007." This Court cannot agree with the defendants. This statement by the defendants is speculation as to why the plaintiff allegedly did not express concerns to a Unit A-2 staff member. Furthermore, there is still a genuine issue of material fact as to the plaintiff's March 2007 move back into the cell with Inmate X. The plaintiff, in his deposition testimony, describes his alleged conversations with Greiner and Clements. Greiner allegedly told the plaintiff that he had to go to his former cell or to the SHU. The plaintiff states that it was up to him to get

13

to the SHU. The plaintiff states that after expressing his concerns to Greiner, he met with Clements. Clements allegedly told him he could go to his former cell by his own power or that "we can drag you." The plaintiff then states that he went voluntarily. If true, as the plaintiff points out in his response to the second motion to dismiss, Clements made the decision not to place the plaintiff in protective custody. Thus, the plaintiff states he believed that an appeal to Corbett would be unsuccessful because a lieutenant had already denied his request for protective custody. Because the plaintiff's testimony, if true, may show that Clements was aware of the plaintiff's safety concerns and refused the plaintiff protective custody, there is a genuine issue of material fact as to the plaintiff's placement into his former cell on March 16, 2007. See Oxendine v. Williams, 509 F.2d 1405 (4th Cir. 1975) (finding a genuine issue of material fact where inmate's claim supported by affidavit contradicted superintendent's statement).

As to submission of the administrative remedy form to Acting Warden Martinez, the defendants point out that the plaintiff stated in his complaint that he gave the complaint to Martinez "a few days later [after March 16, 2007]." In his deposition testimony, the plaintiff states that he gave the form to Martinez "[t]wo, three days at the most" before April 11, 2007. The defendants contend that the Administrative Remedy Clerk received the undated form on April 16, 2007. The plaintiff alleges that Martinez knew of the danger to plaintiff of the move into his former cell. What is

14

important is whether Martinez had notice prior to the alleged rape. The plaintiff states that he was mistaken in his complaint. Regardless of which date the plaintiff claims he submitted the remedy form to Martinez, either date is prior to the alleged rape on April 11, 2007. Martinez states that he does not recall the plaintiff handing him the form, and if the plaintiff did, Martinez would have found room in the SHU for the plaintiff.

The defendants "offer the Court the likelihood that Plaintiff did not submit his administrative remedy until on or about April 16, 2007, and did so through one of the many BOP staff members who made rounds in SHU and to whom Plaintiff could have easily provided the BP-9." The defendants cannot show that a staff member received the form from the plaintiff while in the SHU and then delivered it to the Administrative Remedy Clerk. They instead state that likely occurred. This does not meet the defendants' burden of proving no genuine issue of material fact. The defendants additionally state that because the plaintiff does not request placement in SHU, but, rather, only transfer, he was already locked up and in the SHU when he submitted the form. The plaintiff, in contrast, argues that the form clearly was submitted prior to April 11, 2007 because he did not claim that he was raped on the form. There is clearly a genuine issue of material fact as to when Martinez received the remedy form.

This Court also finds that there are genuine issues of material fact surrounding the events of April 11, 2007, the date of

the alleged rape.  The defendants state that the plaintiff did not have any psychological distress symptoms after the alleged rape. They also state that Monongalia General Hospital did not find any "obvious injuries."  No prison staff member could find the knife with which Inmate X allegedly threatened the plaintiff.  The defendants admit that they did not send the rape kit for analysis. The defendants state that the rape kit was destroyed according to BOP policy on February 18, 2009 "following a routine evidence inventory when no open case regarding the kit was found on the institution's case data base."  This Court again states that the fact that the rape kit was destroyed is troubling, given that "this was the first allegation of rape at USP Hazelton."

The defendants also state that a senior officer specialist overheard the plaintiff state that "he usually gives me two to six books and that's what made me upset.  He didn't pay me.  I want my money."  The defendants state that the senior officer specialist "understood" these comments to mean that the plaintiff had engaged in consensual sex with Inmate X with the expectation that the plaintiff would receive two to six books of stamps.  First, this Court can only consider admissible evidence in a motion for summary judgment. Fed. R. Civ. P. 56(c). Assuming, without deciding, that the alleged statement is an admission by the plaintiff, and is therefore admissible, the statement is mere speculation.  The defendants even admit that the senior officer specialist "understood" the statement to be a false allegation of rape.

Finally, the only evidence that the cell mate and the plaintiff were in a relationship comes from statements of the cell mate after the alleged rape. There are genuine issues of material fact regarding the alleged rape, the move out of the cell, and the return to the cell. Accordingly, summary judgment must be denied.

B.    Qualified Immunity

Under Saucier v. Katz, 533 U.S. 194, 201 (2001), analysis of a qualified immunity defense requires a two-part inquiry. The first question is whether the facts alleged, when viewed in the light most favorable to the injured party, "show the officer's conduct violated a constitutional right." Id. If the facts alleged fail to make this showing, the inquiry is at an end, and the official is entitled to summary judgment. Id. If, however, the facts alleged do show a constitutional injury, the second question is whether the constitutional right was clearly established at the time of the violation. Id. Qualified immunity is abrogated only upon a showing that the officer's conduct violated a constitutional right and that such right was clearly established at the time the conduct occurred. Id.

This Court has found that a genuine issue of material fact exists at this time as to whether the plaintiff has suffered a constitutional injury. This fact alone defeats the defendants' summary judgment motion at this time. This Court presently cannot say as a matter of law that the plaintiff did not suffer a constitutional injury therefore ending the analysis and entitling

the defendants to qualified immunity. Likewise, this Court also cannot find as a matter of law that a constitutional injury did occur, sufficiently moving this Court forward to the second inquiry under <u>Saucier</u>, whether that constitutional right was clearly established. <u>Charbonnages de France</u>, 597 F.2d at 414. Because summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law," summary judgment is not appropriate in this case, and the defendants' motion is denied. <u>Id</u>.; <u>see also</u> <u>Witt v. W. Va. State Police</u>, --- F.3d ----, 2011 WL 338792 (4th Cir. Feb. 4, 2011).

If the defendants are found to have denied the plaintiff humane conditions of confinement and disregarded an excessive risk to the plaintiff's health or safety, the defendants would still be entitled to qualified immunity if a reasonable prison official under the circumstances would not have known that placing the plaintiff with a cell mate who had previously assaulted the plaintiff posed a significant risk of harm. The defendants bear the burden of proof on this second question. <u>Henry v. Purnell</u>, 501 F.3d 374, 378 (4th Cir. 2007). The defendants have not met this burden at this time. A reasonable prison official would recognize that placing the plaintiff with a cell mate who had previously assaulted the plaintiff would pose a significant risk of harm.

C.  Motion for Trial by Jury

The plaintiff demanded a jury on October 7, 2010 by motion. This demand is untimely as it was not served within "14 days after the last pleading directed to the issue." Fed. R. Civ. P. 38(b)(1) (emphasis added).  Rule 39(b) provides this Court with discretion to grant the plaintiff's motion.  Other courts have held that a pro se plaintiff's failure to file a timely demand for a jury as required by Rule 38(b) "is not sufficient basis to grant relief from an untimely jury demand."  Zivkovic v. S. Calif. Edison Co., 302 F.3d 1080, 1087 (9th Cir. 2002).  However, the Supreme Court has stated that:

> [T]rial by jury has always been, and still is, generally regarded as the normal and preferable mode of disposing of issues of fact in civil cases at law as well as in criminal cases.  Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care.

Dimick v. Schiedt, 293 U.S. 474, 485-86 (1935).

Applying the Malbon factors discussed above to this action, this Court concludes that the plaintiff's motion for a jury trial must be granted.  This Court observes that the issues are not "so complex as to make jury resolution difficult."  DeWitt v. Hutchins, 309 F. Supp. 2d 743, 755 (M.D.N.C. 2004).  Furthermore, because "the case may turn substantially on each party's credibility, resolution by a jury may be particularly appropriate."  Id.  While the plaintiff did make the jury demand at a late time in this action, this Court has not set a trial date in this matter.  This

Court believes that the defendants will have ample time to prepare for a jury trial, thus, they "will suffer no significant prejudice if the court allows a jury trial, and a jury trial in this case will not be substantially more burdensome than a bench trial." Id.

D.    Status and Scheduling Conference

This Court finds that it would be beneficial to conduct a status and scheduling conference in this case.  Accordingly, it is ORDERED that the parties appear by counsel for a status and scheduling conference on **February 15, 2011 at 10:00 a.m.** in the chambers of Judge Frederick P. Stamp, Jr., Federal Building, Twelfth and Chapline Streets, Wheeling, West Virginia 26003.

V.    Conclusion

For the reasons set forth above, this Court DENIES the defendants' second motion to dismiss or, in the alternative, motion for summary judgment (Document No. 116) and GRANTS the plaintiff's motion to request trial by jury (Document No. 119).  Further, the plaintiff's motion for leave to file plaintiff's response to defendants' reply to plaintiff's response to defendants' second motion to dismiss, or, in the alternative, for summary judgment (Document No. 133) and the plaintiff's motion to allow, and accept plaintiff's response to defendants' reply, dated November 18, 2010, due to excusable neglect (Document No. 136) are DENIED.  Finally, the plaintiff's motion to subpoena Mr. Randall Corbett as a material witness and have U.S. Marshals Service serve the subpoena (Document No. 96); the plaintiff's motion to request pretrial

conference by video telecommunication (Document No. 97); the plaintiff's motion to compel production of the deposition of Inmate X at trial or, in the alternative, to provide plaintiff a copy of the transcripts and, if possible, the actual video of this deposition (Document No. 98); the plaintiff's motion in limine (Document No. 99); and the plaintiff's motion for plaintiff to appear personally at trial and for a ruling regarding security measures, if any, to be utilized by U.S.M.S. on plaintiff during proceedings, including trial (Document No. 100) are DENIED WITHOUT PREJUDICE to refiling after appointment of an attorney for the plaintiff and after a scheduling order has been entered.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to the plaintiff by certified mail and to counsel of record herein, including the plaintiff's newly appointed counsel.

DATED:    February 7, 2011


                              /s/ Frederick P. Stamp, Jr.
                              FREDERICK P. STAMP, JR.
                              UNITED STATES DISTRICT JUDGE